2410392 I showed two counsel for Unified, is that wrong? Huh? All righty, there we go. Right, Mr. Ritter, when you're ready. May it please the court, good morning, my name is Michael Ritter. Find a way to distinguish your client from the other client since they're both, I mean, since they're both united, it's very confusing. Yes, Your Honor. U.S. Fire is the appellant, represented by myself and Mr. LaBarbera today, and Unified is the appellee. U.S. Fire is respectfully requesting that this court reverse the district court summary judgment and render judgment that Unified's 32-month delay in notifying U.S. Fire of the Butler litigation materially breached its obligations under the quota share treaty and thereby excused U.S. Fire's performance of its obligation to pay a 25% quota share of the $8 million class settlement in the Butler litigation. Before moving into the roadmap, one point of clarification that should be made is that quota share treaty reinsurance is a fundamentally different type of contract in the insurance industry. It's unlike an ordinary traditional insurance policy, such as your auto policy or your health insurance policy, where you pay monthly premiums in exchange for transferring the financial risk of an adverse event onto your auto or health insurance provider. A quota share treaty reinsurance is intended to operate much more like a business partnership agreement between two insurance companies, where the reinsurer shares in both a percentage of the profit and the loss as reflected in the bottom line. The reinsurer is entitled to a percentage of the premiums paid under the short-term medical policy claims that Unified offered here and was also obligated to reimburse Unified for 25% of its claims adjustment expenses. In this way, the quota share treaty nature of this particular reinsurance contract, the parties intended that they would be working side-by-side in lockstep with regard to the claims adjustment expenses, not only with the underlying short-term medical policy that were covered by the reinsurance agreement, but also in litigation. Which brings us to the roadmap for this case. The quota share treaty nature of this particular reinsurance contract underscores U.S. Fire's position on the first three issues. The first issue regards contract construction and the quota share treaty nature of this particular contract highlights how U.S. Fire was brought in as a more experienced business partner to guide Unified in entering a new line of business. What's your evidence of that in the record? The evidence of that in the record is the Hall expert report and the Mattingly deposition. The Hall expert report is at pages 2711 to 2732. And Sharon Mattingly's deposition, who is U.S. Fire's corporate representative, is at page 795. So the undisputed summary judgment evidence establishes that Unified was brought in as a more experienced business partner with regard to issue one. It highlights and reinforces U.S. Fire's plain text interpretation of this contractual agreement, the prompt notice provision, that the words in the opinion of did not intend to completely eliminate all reasonability standards and subject prompt notice to the sole perspective and subjective perspective of Unified. Does it actually matter how we interpret the language of the prompt notice provision, regardless of whether an objective reasonableness component is implied? Have you met your burden on either motion of showing that Unified failed to give notice within a reasonable time after the date that Unified should have believed that the Butler's policy claim might result in a claim under the treaty? Yes, Your Honor. So there's cross motions in the district court. The district court granted Unified's motion. And our initial position is that Unified failed to meet its burden and that we're entitled to reversal and a remand at the very least. But at the most, we are requesting that the court reverse and render judgment. To get to Your Honor's question about meeting of the burdens, the first burden comes down to a contract interpretation question. So even if the court agrees with Unified's interpretation, the district court's interpretation, that it can be purely subjective, U.S. Fire made the argument in the district court in its summary judgment response and making the same argument on appeal that the evidence that Unified relied on, which was the deposition testimony of its corporate representative, that at no point in the first 32 months of the Butler litigation was there any perceived risk that Unified might not win every single claim. When did the court in Montana rule in favor of the Butler's individually? It did, didn't it? Yes, Your Honor. The magistrate recommendation, report and recommendation to grant summary judgment on behalf of the Butler's was I'm looking at this. Was granted on, was issued on August 9th, 2019, which was approximately two years and four months after the Butler suit was filed. It was only, it was almost three months. In September of 19, that's right. Okay, so the point is, the point is, and then, but Unified did not bother to notify U.S. Fire until after the Ninth Circuit had rejected the challenge to class certification. That's correct, Your Honor. Yeah, but it is clear as of August 2019 that even if the only obligation of Unified at that point was to pay the Butler's, that was still something to which U.S. Fire would have had to contribute, right? Absolutely, Your Honor. So at that point, there was no room for an opinion that a claim may arise, right? Correct. But U.S. Fire's position actually goes to the beginning of the lawsuit because even if the lawsuit settled for $1, if there is any possibility for settling the case at all, then it triggered Well, that argument would go to the filing of any claim, really. I mean, that's, that may be overplaying your position. But at the very least, and they didn't give notice for months and months afterwards. That's correct, Your Honor. The court need not address the beginning of the lawsuit because even from the time that the magistrate judge recommended summary judgment or the Montana District Court granted summary judgment, the delay was long enough to be considered a breach of the prompt notice provision as a matter of law. With regard to Your Honor's question about having to give notice of every single claim, the Unified made the argument that the contract, the prompt notice provision here, can't be construed reasonably to require them to give notice of every possible claim. But the reason why that provision needs to be read in context of the entire agreement is because this is a treaty insurance agreement in which every single claim that came through Unified's door implicated reinsurance. Right. But can't we, but am I right? That U.S. Fire did not really want notice of every single claim that was filed? As far as what U.S. I mean, let's assume that generally speaking, claims are going to have some validity to them. They're short-term medical. There must be some criteria or agreement. So even though U.S. Fire might have to pay, I presume that the understanding between the parties or the course of performance was that U.S. Fire would write a whole bunch of checks without saying that there was no prompt notice. That's correct. With the submission of the STM policy claims, it was done under Article 15 on a monthly basis for Unified to cede those costs to U.S. Fire. And it was through that process by which U.S. Fire and Unified worked together as business partners to improve the efficiency of Unified's business and entering the new market of short-term medical benefits. So with regard to the breach being prejudicial to Unified's, U.S. Fire's rights in this case, the loss of U.S. Going back to the quota share treaty nature of this agreement, which the partners were supposed to be working side-by-side as per the Hall expert report, U.S. Fire was materially prejudiced when it was excluded from the entire liability phase of the Butler litigation and the entire class certification phase of the litigation. To use this court's phrasing from… What confused me in looking at this case is the district court doesn't seem to distinguish between this case and ordinary reinsurance, right? Correct, Your Honor. He didn't mention the Hall report at all, did he? No, Your Honor. Okay. That's what confused me. And that's a very important context to understanding the contract as a whole and U.S. Fire's right to associate. To use this court's analogy from Berkeley 1, the Cowles have long since left the barn when Unified invited U.S. Fire to close the door. But more specifically, with regard to what happened in the Butler litigation because it proceeded so abnormally, the more accurate way to phrase that would be Unified was at the barn door and was supposed to take U.S. Fire with it. Unified opened the door. The liability Cowles left the barn. The class certification Cowles left the barn. The nominal damages Cowles left the barn, as did the attorney's fees Cowles. And so when U.S. Fire was invited to help close the door, Unified now pointed to the damages Cowles still in the barn and saying, well, hey, we saw the Cowles in the barn. But the question here is, were all the Cowles that left the barn important? And when we're talking about liability, we're talking about class certification in the vast majority of circumstances. The answer is that's absolutely an important right to be involved in those phases of the litigation. There is a very rare exception that we see in excess liability cases. In an excess liability case, you have a primary insurer that covers a certain amount of liability, so maybe up to a million dollars. You'll then get a second excess insurance if your liability goes above $1 million. So the fact of liability alone may not implicate the excess layer, so it may not be prejudicial to an excess carrier to not be involved in the liability phase. But here we have a first dollar quota share reinsurance treaty in which the $1 out of Unified's pocket was $0.25 out of U.S. Fire's pocket. What the district court also erred in analyzing was the requirement that construing prejudice under Texas Supreme Court precedent as requiring U.S. Fire to show the substantial likelihood of a different result. The standard adopted by the Texas Supreme Court in PHA, Lennar, and Hernandez does not require showing that U.S. Fire would have been financially better off. It is the loss of an important right. And this court's decision in Trumbull in the analysis of how when the insured fails to notify the insurer of a litigation and they're not involved, how that presents problems of proof of what would have happened otherwise if the insurer was involved. You'd have to kind of, sort of, it complicates issues of proof. And with the Butler litigation here, because it proceeded so abnormally, this case just looks unlike any of the other cases that had existed. So, under this... Excuse me, because it's so unique and because the Supreme Court hasn't spoken to what in the opinion of the company and other things mean, should we certify a question on this to the Texas Supreme Court, the Supreme Court of Texas? U.S. Fire's initial position is that the question doesn't need to be certified because the standards that are set out by the Texas Supreme Court provide sufficient guidance for this court to make an eerie guess about how the Texas Supreme Court would resolve this issue. And it's about the loss of an important right. The record here establishes that the right to associate is provided in Article 8E of the Quotasure Treaty at page 765 of the record. The reinsurer, which is U.S. Fire, shall have the right to participate at its own expense with the company unified in a defense and or settlement of any claims. So, an important part of that right, the benefit of the bargain was to be involved in the defense of any claim. The defense of any claim, what unified is attempting to do is to say that we participate in the defense as to damages, so no material important right was lost. And U.S. Fire takes the position that it lost an important right. It was prejudiced by the unified's breach and as a result is requesting reversal and rendition of judgment, if not remand for a trial. All right. Thank you, sir. We'll hear next from Ms. Miniter. Thank you, Your Honor. Good morning. May it please the Court. I'd like to briefly highlight the two primary reasons for why affirmance is required. My colleague, Mr. Detter, will then address the class counsel fee issue. The first primary reason for why affirmance is required is that U.S. Fire's interpretation of this agreement cannot be squared with the plain and specific words that these two sophisticated insurance companies agree to. The agreement plainly says that our duty to notify arises when, in our opinion, we may be liable under our covered policies and thus have a reinsurance claim. The agreement does not say that our opinion is subject to any hindsight review, which U.S. Fire could always invoke to forestall its coverage obligations. None of U.S. Fire's authorities support its reading. Christiana, Blanton, and Greyhound did not involve notice provisions that expressly defer to the opinion of the insured to determine when it may have a reinsurance claim. So, you had no obligation. So, I keep getting these companies confused. Unified had no obligation to notify U.S. Fire that a claim may result in them having to pay something even when summary judgment was granted for the butlers? That's correct, Judge Enzo. But U.S. Fire, at that point, had to pay 25% of that claim. At that point, Judge Jones, as our witness testified, that we had already paid, we had resolved any balance billing issues with Mr. Butler's medical providers by that time. So, shortly after the lawsuit was filed, our witness testified, we had already paid Mr. Butler's disputed medical expenses. And as we put in our summary judgment briefing— I don't think that matters because you are on the losing end of a judgment, right, in favor of the butlers, right? There would be—well, there was no—at that point, Your Honor, there was no clear damages. We had already resolved the butlers' expenses. Well, U.S. Fire was having to pay part of those, wasn't it? It would have paid as a part of the appeal, as a part of the process for us resolving the expenses, yes. But the case was not resolved. Mr. Butler's claims, so for his medical expenses, those were resolved. We paid those. I understand that, but that was in the face of a claim that the company was systematically underpaying the doctors or whoever the providers were. Yes, Judge Jones. And at most, at most what that would mean is that if it was determined that Mr. Butler, if it was determined that the repricing methodology that we used somehow underpaid Mr. Butler's medical expenses, even so, we had paid the balance billing. But the basis of the summary judgment must have been as a matter of law that the formulation was not appropriate or was incorrect, right? That's correct, Judge Jones. All right. And then my point is, at what point did this become a class action? Were class action allegations on the table in August of 19 or did they immediately amend? The class action allegations were on the table at the time the magistrate judge ruled on Mr. Butler's individual claim. I also think it's important to know that from UNIFI's perspective, the magistrate judge's ruling regarding summary judgment as to Mr. Butler's claim contained clear errors. Those, of course, were subjected to novel review by the district court. Everybody who loses in trial thinks the judge made clear errors. One party to this case is going to think there were clear errors. But that does not mean that the opinion of the, you know, we'll just blow this off. We'll eliminate the claim of the class plaintiff and therefore hope to defend going forward, right? Well, I think there's two parts to that question, Judge Jones. I think one, once there was liability determined as to Mr. Butler's individual claim, as I mentioned, our witness testified there were no damages from our perspective. We had paid, we had resolved with his individual medical providers any outstanding balance of building. So at most, perhaps Mr. Butler would have nominal damages. But our witness testified that we did not intend to seek reinsurance from U.S. Fire at that point. That is... Where's that in writing? In the record, Your Honor? No, no, no. Did UNIFI put that in writing to U.S. Fire at some point? Well, no, but we did say... Of course not. Well, Judge Jones, but we did not, I think our witness's testimony is corroborated by the fact that we didn't hire, we did not hire class counsel until after we thought the class claims were going to move forward. So the fact that there was adverse liability regarding Mr. Butler's claim... Well, let me just say, at what point is it your contention the Unified could have waited until... I don't know, I mean, it seems to me they did wait until the horse was out of the barn. At what point did Unified's opinion ripen into something where they needed to give notice when the... I sort of agree with them that the character of this insurance is that they're entitled to be in there a lot when the case goes to lawsuit. Well, I think we have to start with the plain words of the agreement, Your Honor. The agreement says that, I mean, they are a sophisticated insurance company. They agreed that we would run the litigation strategy, we were in charge of settlement, and it would be up to us, it would be our opinion would determine when to involve them in the case. That's what they agreed to under the plain text of the agreement. Was that negotiated language or standard for this kind of reinsurance contract? That was... Verbatim language or words to the effect, quote, in our opinion, yeah, yeah, yeah. I mean, that triggering piece of language, was that some negotiated language between the two? Or in these reinsurance arrangements, is that kind of stock language? I know you are going to agree to it, but I'm just sort of... It sort of jumps out at you when you're reading the case of this language that makes it solely discretion. Did they negotiate that or was that plugged in? Yes, Judge Stuart. We cited in our brief a record site showing that their witness testified that they were engaged in reviewing the reinsurance agreement language. I think the other cases that exist regarding this issue show that not every contract has this kind of language. This was specific language that was put into this agreement between these two parties. Other insurance contracts don't necessarily have this kind of language. Well, do you believe that this language incorporates a reasonableness requirement or not? I'm sorry, Judge Allred? Do you believe that this language incorporates a reasonableness requirement on the company? So it's not just whenever the company wants to do something, no matter what the circumstances are. Do you believe that there is a reasonableness requirement incorporated because of Texas law or any other reason? Well, I think that Texas law always requires parties to act with due care in carrying out their contractual duties. That's different from saying that our business judgment is subject to review for whether we should have known something earlier or whether we should have made some determination earlier. But U.S. Fire does not take this judgment. It's not reviewed for any. This is related to the questions Judge Jones asked you at some length. So there is no requirement that it be reasonable or make business sense or make, you know, there's no requirement whatsoever. Is your position? The plain text of the agreement, Judge Allred, simply says that when we have formulated our opinion that we may be liable under our covered policies, that is when our duty to notify is triggered. That's what the parties agreed to under the plain text of the agreement. The Texas Supreme Court has consistently said that it's not the duty of courts to come in after the fact and rewrite an agreement when one party has said that they don't think this is fair. We're not trying to do, I don't believe any court suggesting we're rewriting something. We're asking you what your position is. So the answer to my question, is there a reasonableness requirement imputed to this contract language because of Texas law? And your answer is no. Is that correct? Judge Allred, our answer is no as to our opinion. However, the contract does require us to give prompt notice once we have developed our honest opinion about whether we are liable under our covered policies. And so I think that requirement of prompt notice does limit the discretion provided to us as to when we are to provide notice. There aren't many cases, as you say, that are directly on point. But one of the parties did cite a case called Stonewall Insurance v. Modern Exploration, Texas Court of Appeals, 1988, in which the insured was required to give prompt notice. And it says, when an occurrence takes place which, in the opinion of the insured, involves or may involve liability on the part of the company, prompt written notice shall be made. And then it says, since the issue technically is what is prompt notice within a reasonable time, but the result of the case is that summary judgment was overturned and the case had to go to trial, what constitutes a reasonable amount of time depends on the facts and circumstances in each case. And that was a matter of six months after the occurrence. But my point is, that opinion did not turn on what is the opinion of the insured, but in what is a reasonable time. And here it is, in the opinion of Unified, what may be a claim. Let me ask you an additional question. Is it not the case that if an insurer in Montana, as is the case in Texas, does not pay promptly, makes a bad faith determination, has no reasonable basis, that the insurer becomes liable for extra damages and attorney's fees under the Texas Insurance Code? Thank you, Judge Jones. So as to your first question regarding Stonewall, the issue there, the court actually never addressed the issue of whether to impose an objective reasonability standard on the insurers. But the parties evidently didn't even think it was worth considering. Well, I think that's in part because, Judge Jones, there, the insured had already sent a demand, indicating that the insured believed that the disputed excess insurance was implicated. And so the question was, after that demand, reflecting the insured's determination, was notice then prompt? So the question in Stonewall was whether notice was prompt after the termination, not whether to impose an objective reasonability standard on the actual determination that was made. Regarding Your Honor's question about? Extra damages. Extra damages. I honestly don't know the answer to that question, Judge Jones. I apologize. Well, I'll bet you there's not a state in the United States that doesn't have these kinds of requirements for insurers to pay promptly and, you know, to the letter of the law and that sort of thing. And then when you have a class action pled, that multiplies the, I mean, did the Butler case have allegations about extra contractual, you know, statutory damages? So in terms of, so I think it's important, I would like to point out for the Butler's case, there were other claims that were made in addition to the breach of contract claim based on our repricing methodology. Those other claims were for various claims of misrepresentation and unfair settlement practices. Our witness testified that the reason we did not believe that those claims were even subject to reinsurance, and that's because in other instances, as to the misrepresentation, a different party would have been liable for those, not us. And that was based on our witness testified. That was based on our prior experience. So we, and point of fact, we never sought reinsurance for the settlement of those individual claims with the Butler's. We never sought reinsurance for those other individual claims of the Butler's, the misrepresentation or the unfair settlement practices. We also never sought reinsurance for the legal expenses incurred from the start of the litigation. We only sought litigation expenses for the class. Maybe that was a determination made after the company realized that they should have given prompt notice. I think that's, I mean, we only have the record that's in front of us, Your Honor, and I think at the very least, it does suggest that it is speculative to suggest that just because the Butler's filed the lawsuit, that we had a reinsurance claim. I mean, this sounds like something that a jury should really be deciding and not the court. Well, I think, Your Honor, I think this is why I would like to take a step back and just go back to the plain language of the agreement. These are two sophisticated parties. They knew what they were doing when they were entering the agreement. They could have written a provision just saying, in Unified's reasonable opinion, that would be the time when duty to notify is triggered. They did not do that. And I think it's also important to remember that, of course, if it was true that the plain language means something different and a reasonableness requirement is imposed, U.S. Fire could always invoke that provision, that unwritten provision, that unwritten obligation to second-guess our opinion and forestall its reinsurance, its coverage obligations, which, of course, is the very reason why we have reinsurance in the first place. It's not reinsurance. This is not your classic reinsurance, though. You can call it what you want. It's more like a participation insurance. But anyway, that's just my opinion. What is your thought on the certification? I think as an initial matter, we don't believe certification is required just because the plain language does not require a reasonability standard, and we don't believe the Texas Supreme Court, there's any authority to suggest that the Texas Supreme Court would say that there is a reasonableness standard required. But in the event that the Court thought that the law is unclear, we would, of course, be, we would support certification over a contrary reading that we think would obviate the plain text of the party's agreement. But at bottom, don't you take the position it's a contract issue? At bottom, don't you take the view it's a contract issue? Correct, Your Honor. Judge Stewart, I believe that this is a plain reading of the contract. The language is very clear. The parties could have written a different provision. They didn't. And I think that there is. I'm sorry, but, you know, we're not going to interpret a contract to be absurd. And if under all the . . . you know, I may be wrong about all the circumstances that caught my attention. And there's apparently expert testimony. There's testimony from lawyers who participated in the Butler. There's a lot of testimony here about the opinion. And at some point, somebody has to apply the facts to the law, which is what we do in these cases. Judge Jones, I would like to just note that I think that it is perfectly reasonable for two sophisticated insurance companies to say, we don't need notice until, in your opinion, you may be liable under your covered policies. There's nothing inherently absurd about two insurance companies agreeing to that. Well, again, in how many cases was he . . . and I'm sorry to take so long on this, but in how many cases did Unified have lawsuits filed against it for coverage when it did not notify U.S. Fire? I don't recall that being in the record, Judge Jones. Well, I mean, that's the kind of thing, you know . . . When a case like . . . when an insurance case gets into suit, there are invariably misrepresentation and bad faith claims, associated attorney's fees claims, and so on, so the ante goes up every time. I mean, we see a lot of insurance cases. Let me just ask you. I mean, we also get plenty of times where people ask us to tell them what they agreed to. Sometimes they're adhesion contracts where, you know, it's uneven, but frequently we get cases where sophisticated people ask us to tell them what they agreed to back then. Now, I can't speak for Texas, but I know in Louisiana, parties can agree to something, but if it's against public policy, it can't be enforced. We call it contra devonis moris. That's a Louisiana term. My two Texas colleagues probably may not have no analog, and that's good. We don't want them to have an analog, but we'd say it's contra devonis moris. I mean, you agreed to it, but it's against public policy. It's reprehensible. You know, it's bad business. It's whatever the case may be. I'm assuming, arguendo, there's no such public policy derogation of somebody wishing they had agreed to something else, but this is what they agreed to. Nobody's making that argument, and I just ask, is there, you know, some public policy derogation that might be lurking somewhere just for the sake of my post-argument digging? And I see that I'm definitely out of time, but I would like to address your question. No, but the red light doesn't count against my question. There is no, U.S. Fire has not raised any public policy reason for why the court should read the agreement to say that an objective reasonableness standard applies when the parties did not write it in. I would also just like to note that when we gave notice, there was no liable determination as to the class claim. Mediation was a long ways off. There was no damages established. My question doesn't give me license to make more arguments. I just ask a straight-on question, and you answer it, no. Judge Jones presiding, but that's good for me, is forced to answer. Well, we have another issue in the case, anyway, that Mr. Depter is going to . . . Thank you, Your Honors. Thank you, Your Honor. May it please the Court. As my colleague mentioned, I will be separately addressing the class counsel fees issue. The district court correctly concluded that Unified's $8 million settlement of the Butler class action, including the portion allocated to class counsel fees, is a claim within the meaning of the agreement, and therefore subject to reinsurance coverage. The agreement defines claims broadly as damages, benefits, or indemnity that Unified pays or is liable to pay, whether by strict policy conditions or by way of compromise, as a consequence of its issuance of policy. Now, you're going to argue the flexibility of Texas law here, right? Could you elaborate, Judge Jones? Well, Texas law says that attorneys' fees are not damages. That's correct, it does. But what we're talking about here is . . . That's what I mean. Let's be flexible. Your Honor, what you're referring to in that Xerox case is attorneys' fees when it is in the context of a fees-shifting statute. It's not in the context of a class settlement under the Common Fund Doctrine, as I'm about to get to. We think that's a very different context. That is relying on attorneys' fees being separate liabilities, which is different from the class counsel fees, which are basically coming from the class. Here, by way of . . . What's the best Common Fund Doctrine case? What's the best Common Fund Doctrine case for you? Your Honor, we relied on the Boeing case that is cited in our brief. I would also direct . . . So the implication for this case that's based on the Common Fund Doctrine is that the class counsel fees are essentially paid by the class, not by Unified. Even though the money comes from Unified, it's coming out of the class's recovery. And there's another . . . The best case would be an Eighth Circuit case, Johnston v. Comerica Mortgage Corporation. That's 83 F. 3rd 241. That sort of substantiates what I'm saying. It said, although under the terms of each settlement agreement, attorneys' fees technically derive from the defendant rather than out-of-class recovery, in essence, the entire settlement comes from the same source. The awards to the class and the agreement on attorneys' fees represent a package deal. And here's the important part. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class's recovery. Do we have anything in the decision or judgment on the Butler case that expresses the term Common Fund? This is your characterization. No, but in general, when courts award fees to class counsel in the class action context as a percentage method rather than applying a load-star method, that's relying on the Common Fund doctrine as set forth in the Bowen case. So that's sort of the theoretical framework that the Court's relying on. And just as a record citation, if the Court . . . Do we have the judgment in the Butler case in the record or . . . Sorry? Is the judgment or opinion in the Butler case, are those in the record? I'm not sure what the Court's referring to. The district court's judgment? The Montana court's judgment in the Butler case. Oh, yes. Are you . . . the order approving the settlement? Yes. Yes, yes, we do. I was just asking.  Certainly we do. That's at record citation 1624. Okay. And on that point, I would direct the Court to both the order approving settlement and the settlement agreement, where it specifically says that the amounts for the class counsel fees are to be paid out of the settlement, not on top of it. Those are in the order approving that citation is 1628-29, and in the settlement agreement it's 1616. Another important part of the settlement agreement that speaks to this is the section on settlement consideration. That's at record site 1599-1600. It says, as consideration for the terms, conditions, and releases herein, defendant has agreed to make the entire $8 million settlement fund, including the class counsel fees. So the entire $8 million is going to release the claim, so we think that speaks to why it damages benefits or indemnity. I see that my time is concluded, unless the Court has any further questions. No, sir. Thank you. All right. Okay, Mr. LaBarbera. Thank you, Your Honor, and good morning. I'd like to put a fine point on some of the questions this Court has asked, and I think, Chief Judge Elrod, one of the first questions you asked was whether it mattered, whether an objective or subjective standard applied, and Judge Stewart asked, was the contract language negotiated? The contract language was negotiated, but within all contracts, they're negotiated within the context of the law and industry custom and practice. The parties do not dispute that good faith is material to contract interpretation, good faith in fair dealing, and the doctrine that we read the contract as a whole, not myopically. Good faith in the reinsurance context is defined. It's defined in the Christiania case. In that case, the Second Circuit in 1992 stated, with regard to good faith, the reinsured's duty of good faith requires it to place the reinsurer in the same position as the seating company and give the reinsurer the same means and opportunity of judging the value of the risks. That's at page 280 of that decision. That has been a bedrock principle in reinsurance law since 1992. Further distilling that concept and crystallizing that concept, we have Unigard against North River Insurance Company and Lloyds of London against Home Insurance Company, and what those courts said in the context of providing notice to the reinsurer, that good faith required the seating company, in this case Unified Life, to have a process or procedure for giving notice to the reinsurer of claims. In this case, that's absolutely absent. There is no factual dispute that they testified they had no procedure in place. They described it as an ad hoc procedure, and an ad hoc procedure, I would contend, is no procedure whatsoever. And in those cases, Unigard and Lloyds versus Home, the court relieved the reinsurer of performance because of that lack of good faith, defined as a failure to have a process. Unigard did not relieve the reinsurer. I apologize, Your Honors. They found that the Home Insurance Company was merely negligent, not grossly negligent. Yeah, North River. The Home, however, in Lloyds versus Home, the Supreme Court of New Hampshire, found gross negligence on the part of the Home in having no procedures and relieved Lloyds of performing. The same result should ensue here. Good faith and fair dealing is central to the relationship between reinsurer and seating company, and even more so in the context of the partnership of the court of share. It was one thing that I'd forgotten about until she mentioned it in passing. Didn't this contract also give Unified the right to control the litigation unequivocally? Oh, without a doubt, they control the litigation. And within the reinsurance body of case law, there's a doctrine called follow the fortunes, where the reinsurer is bound by what happens to the seating company. We don't get the opportunity to second guess. That's why I'm looking at this context a little different from the ordinary reinsurance because, you know, your co-counsel says, well, we have the right to help them out, and we wanted to participate and give our expert advice and, you know, benefit our superior experience. So where do you draw the lines here? Well, Judge Jones, we draw the line at the right to associate, and by failing to give us the prompt notice required, they frustrated and actually prevented our right of actually associating in the defense. And association is much more than controlling the defense. It's offering advice. It's offering counsel. It's offering commentary on strategy. While we cannot control the defense of the underlying case, we mitigate the follow the fortunes doctrine by having the right to associate. And the facts demonstrate in this case that we actually did. It's not a hypothetical. We did attempt to do things long after the fact, and when it's long after the fact, it's no surprise that we were unable to do that. And as my time runs down, I will just note reliance on the Trumbull Steel Erector's Law. Yes, Your Honor. What do you say to the argument that, well, that's all good for normal reinsurance, but this is a unicorn of a contract, and you are very sophisticated, and you agreed to a unicorn contract that gave them unilateral control of everything and doesn't have any kind of reasonableness requirement? What do you say to that? Even if you were to reject the notion that reasonableness was required, Your Honor, the discretion that they have has to be exercised within the bounds of good faith, and we know what the definition of good faith is in the reinsurance context from the Christiania case, which means they have to put their interests and U.S. Fire's interests in the same place. They cannot sit, wait for the worst case to happen, wait for an absurd result, and then turn around and say, well, we just didn't think about that. And that brings me to the Trumbull case, in that that case, this Court resolved that in part by saying you can't rely. To obtain summary judgment, you can't rely on self-serving, unsubstantiated evidence. It has to be something. Here, you have the testimony of a corporate representative that said, we just didn't think we would ever have liability. There's no contemporaneous documentation attendant to that. There's nothing, there's not a memo, not an email, just the after-the-fact explanatory explanation, the explanation, we just didn't think we have liability. There is no litigant, I would contend, in the United States that gets sued and gets sued in a class action setting that contemplates no chance of having liability. And with that, if Your Honors have any other questions, I would be happy to answer them. I think we've exhausted this case. Thank you. Thank you very much.